Good morning, Your Honors. May it please the Court, Zachary Nightingale for Respondent, Mr. Mann, who is here in court. I would like to reserve five minutes for my rebuttal. This case is fundamentally about statutory interpretation. Clearly, in the purview of this Court, but which the BIA completely failed to do in the underlying case matter of Kahn, on which the decision here was based. For that reason, we believe remand to the BIA is appropriate to consider in the first instance, which it never did, and let me explain why. Congress deliberately chose the words, Attorney General, in the 212d3 waiver for nonimmigrant seeking admission. This Court has already addressed the words, Attorney General, in Nijar v. Holder, which we cited on page 25 of the opening brief. The government did not address it all in their briefing. In Nijar, the Court there specifically found, in a very analogous situation, that when Congress said, Attorney General, that's what it means. There's no Chevron, there's no any kind of deference that applies when the language is clear and unambiguous. Any contrary agency interpretation, right, either through regulation or through a decision interpreting the regulation has to be invalid. Another similarity with the Nijar decision is that Congress here had another way to express its intention, and that is subsequent amendments to the statute. After the U visa was created, the 212d3, I'd always said Attorney General, the 212d3 language was amended by Congress in 2005, restructured it, and they left the words Attorney General there in 2006. Sotomayor, let me just clarify what you're asking, because at the outset you said we should remand to the BIA. And were you saying we should remand to the BIA to reinterpret the statute? I don't think the answer is yes. And the reason is I don't think that the BIA here ever interpreted the statute. I think the BIA focused almost exclusively on its own regulations, which are not relevant. Okay. So we have a situation here where we have the 7th Circuit and the 11th Circuit have gone one way, and we have the 3rd Circuit having gone a different way. So you're suggesting to us that we don't need to answer the question and that we would simply remand because the BIA didn't actually take everything into account. So the short answer is yes. But if I could explain why, I think here. I will note that when the 3rd Circuit decision came down, it was before the matter-of-con BIA decision. So the only two circuits to have addressed this since the BIA came out with its decision is the 7th in the BIA, is by Easterbrook and the 11th. Of course, this Court can apply normal statutory interpretation rules to figure out the meaning of Congress. It's particularly complicated here, I think, because it's not really clear what the agency should do after that, right, like how the agency is going to implement the words attorney general. The most logical thing would be immigration judge, right? But in theory, nothing would prevent the attorney general from creating an alternative procedure, as long as it's in the purview of the attorney general. Obviously, that's not something this Court would decide. So the question, although it's been framed as whether the I.J. has the authority, the question is whether the authority remains with the attorney general in light of the more specific U visa statute. I think that's right for the very specific question before this Court. The only existing infrastructure or decision-making process is the immigration judge. And the regulations specifically give the attorney general's decision-making authority in immigration cases to the immigration judge, right? And so we've seen immigration judges very well equipped to make these decisions. So by all means, that's the most logical end result and the only possible end result given the current regulatory structure. But I don't really think this Court needs to ultimately decide that in order to find that the agency was wrong in not giving meaning to the statute, right? And so... So let me also understand then, we have this very specific statute that gives the U.S. CIS the authority to make the U visa waivers, correct? The D-14 is given to Homeland Security. Right. But you're suggesting that there can be a parallel path. That's right. So... You know, and the first reaction I have, although not necessarily the final reaction, but the first reaction is, well, you now have a very specific statute which normally would trump a general or attorney general statute. Why wouldn't that canon of construction preclude your argument? Because they're parallel. They don't contradict each other, right? I think that the specific over, you know, trumps the general applies if they actually contradict each other. They don't, because the D-14 is specifically in the purview of the Homeland Security Secretary. The D-3 is in the purview of the attorney general. That's not a contradiction. That's two separate waivers to victims of crime to whom Congress clearly meant to be generous in providing a U visa in the first place, in providing a manner to not have to hide in the shadows and cooperate with law enforcement. Which statute was passed first? Well, the D-3 general waiver for all nonimmigrants has been in the statute, I think, since its 52 enactment. The U visa was created in 2000, but when Congress created the U visa, it was specifically a nonimmigrant visa. Well, the D-3 waiver already existed to waive nonimmigrant admissions if they're inadmissible. So when they created the U visa as a nonimmigrant, they would have been well aware there was already an existing waiver, right, and they created a separate one. They're not coextensive. The briefs indicate how they differ slightly. Congress clearly meant for U visa as a nonimmigrant to have the existing waiver for the attorney general, and the special D-14 waiver only for U visa applicants was not exactly the same to guarantee they had access to that, and that would be from Homeland Security. I might add, when the 2000 U visa was created, Homeland Security didn't exist yet, right? So Homeland Security came into existence in 2002. And subsequently, Congress amended the D-14 waiver that originally said attorney general, because that's all there was, and changed that to Homeland Security in 2006. They never went back and changed the D-13. Excuse me, the D-3, the D-3 state attorney general. And there's been no dispute. To this day, when the government adjudicates U visa waivers, it's under both D-3 and D-14. There's no dispute that U visa applicants get access to both, right? Scalia. How many times did your client ask to reopen? Three, Your Honor. Is there any problem? Does he have to show that there was ineffective assistance of counsel? Yeah. If he goes back down to the --? He does. But the board said the reason there was no ineffective assistance is simply because the board doesn't accept the attorney general's jurisdiction over the U visa waiver, which was the whole basis of the ineffective assistance. So the ineffective assistance question collapses with the does the attorney general have jurisdiction over U visa waivers question, right, which is, we think, the fundamental error. So he doesn't have to show that. If we win on the point, like in the 7th and 11th Circuit, that the judge does have jurisdiction over that, then I think the ineffective assistance is clear. The BIA didn't give any other reason for rejecting ineffective assistance other than there was no waiver to apply for. Once we know there is a waiver to apply for, yes, you would have to remand for the board to determine whether that was ineffective assistance, but I think it would be very clear that it was. He doesn't have to file his claim with the Bar Association or anything? He did. That was all documented in the motion to reopen. Yeah. He satisfied all those requirements. He did. Yeah. If there's nothing else, I will reserve the remainder of my time. You may. Thank you. Thank you. May it please the Court, Your Honors, Tim Remitz on behalf of the United States Attorney General. In this immigration case, the petitioner is asking the Court to carve out a second form of jurisdiction for U visa waivers. When all the statutes and all the regulations otherwise place this jurisdiction within UCIS, he wants to, meanwhile, rely on a much older statute, the general visa nonimmigrant waiver under D3, and import that to removal proceedings and have jurisdiction under immigration judges as well. And the Court should reject petitioner's invitation, one, because it's not supported by the statutes, it's not supported by regulations implementing those statutes, and three, it leads to absurd results and unfair results as well. So are we supposed to consider this discretion by the Attorney General as just invalid now? It's not invalid. What's a matter of con is the Board's decision addressing the D3 authority, and it's really, unfortunately, kind of a boring history lesson in the D3 authority, which started in 1950s. And so what it is discussing is that the D3 authority really has no applicability in the U visa context. So the Attorney General has this authority, and he is delegated to immigration judges, but only in a very specific context, which is not relevant in the U visa context. So U visas are a very unique type of visas, which are really for people within the United States already. So visas are usually a process of traveling to the United States, but the U visa is different. You have a crime that most typically occurred within the United States, so someone's in the United States present already, and they go through the visa process at that point. So what a matter of con is saying is that because they're in the United States already, that D3 does not apply because over the decades, it's been limited to port of entry determinations. So the only role for immigration judges under the D3 waiver, and so when they say the Attorney General is the authority under Nijar, we agree that that is the case, and IJs implement the Attorney General's authority. We're just arguing a matter of cons explaining that the D3 authority is very limited in a way that does not apply. So they cite matter of fwayo and matter of con, and they cite the regulations implementing D3. That's 212.4, and that is 235.2, I believe. And those regulations implement this D3 authority, and they state that it's only for, and they're old regulations. They were implemented in the 1960s after this D3 was enacted in the 1950s. And so what it's saying is that it's for the old exclusion proceedings. So before exclusion and deportation proceedings merged in 1996, you had exclusion proceedings, and that was when someone was legally not in the United States yet. They could be here, but for legal purposes, they're seeking admission. They've not effected an entry. And that was the only time an immigration judge had a role under D3. Someone who — The Seventh Circuit has rejected that theory, right? And the Eleventh also, right? I respectfully disagree with those decisions, and I think, starting with the Seventh Circuit's first decision, LDJ, they didn't look at those regulations. They didn't have the benefit of matter of con, either. And so they didn't look at the regulations implementing D3, which was 212.4 and 235.2. Those are ignored in that decision. And I would also state that they do agree a statutory scheme is ambiguous. Why are these two different waivers? And their attempts to reconcile it, I don't think, make a lot of sense. One, they start out with the premise in LDJ that it would be redundant. Why would Congress enact this D14 waiver if the D3 waiver covered everything already? And they come to this conclusion that, well, because D14 waiver is broader, that's why Congress did it. And the D14 waiver allows UCS to waive every ground of inadmissibility with the exception of extrajudicial killings and participation in persecution. The D3 waiver is more limited, however. That waiver — there's a certain security grounds you can't waive. So it doesn't really make a lot of sense to have these two parallel waivers when one is actually more limited. So when that plays out before the removal proceedings, you could have someone before an immigration judge requesting a waiver in the Seventh or Eleventh Circuit, and then they need to have security waiver ground. These security grounds waive, and IG has no permission to waive. Then you'd have to bounce back to UCIS to again seek the waiver before UCIS, because they have more authority to waive more things. So I think the Seventh Circuit's reasoning is flawed, and they also don't address those regulations. And they subsequently do turn back. First of all, are you — there's two Seventh Circuit decisions. Yes. So you're talking the first — The first one. Okay. But on the second one in Baez, they kind of go after it again. And there, they're talking about this general delegation, and they say, well, the BIA didn't address that. So that gets us back to the very first question here that Mr. Minutes — that Mr. Nightingale asked for. And he says, why shouldn't we, now that we have Matter of Con, we have these and that it did not address certain regulatory aspects, why shouldn't we send it back to the BIA to review? Do you have an objection to that? I would first — I have no objection to remand rather than the court establishing jurisdiction. So you'd rather remand than lose? Yes, of course. All right. I understand that. However, I think there's a very good reason why the Board doesn't address that regulation that Sanchez is concerned with, because it really is irrelevant. It kind of comes out of nowhere. In Sanchez, they turn back this regulation 1000 — or HCFR 1000.10a and b, I believe. And they say, this is just another general delegation of authority to immigration judges. Well, that's never been contested again. We have always been consistent in saying that we are saying what's delegated to the immigration judges is simply not relevant here. So we're not challenging whether or not D3 is delegated to immigration judges. It is, but only in those certain port of entry determinations which don't occur in the U visa context. So that's why we don't see why the Seventh Circuit found that relevant. And also, when you look at that regulation, 1000.10b or a and b, it doesn't make sense because subsection b states that immigration judges should only be delegated authority necessary to the disposition of the cases in front of them. A U visa is not necessary to disposition of a case in front of an immigration judge. Immigration judges don't otherwise have any authority over U visa merits or the ultimate adjustment of status. The most they can do is grant a continuance while UCS considers the visa. Even when that visa is granted, like for this petitioner, they don't have the authority to terminate proceedings. Proceedings are ongoing until DHS agrees within their discretion to reopen and close proceedings. So it doesn't dispose of an immigration judge's case whatsoever. So that's why the regulation, as far as the government is concerned, we don't know why the Seventh Circuit finds that relevant. And I think if you remanded matter of con, they'd explain that again, but that's why it just comes out of nowhere. We don't see why the Seventh Circuit found that relevant. And matter of con would still control because it walks through why that D3 authority does not apply. So the year that the U visa was created was in the 2000s? Correct. And you're saying that if you permit authority of the IJ to address the U visa, that it would allow U visa proceedings to proceed? That's correct. Because all visa matters are collateral to removal proceedings. They're separate proceedings. And they always have been. And that's why wrenching this D3 waiver to import this one limited proceeding to immigration judges also doesn't make sense because traditionally it's only been used at ports of entry. And now petitioners want this nontraditional use of the D3 to create this odd procedure where there is just one little part of the visa proceeding in front of an immigration judge, but none of the rest. I can't think of any other visa proceeding like that. But just because there isn't something else doesn't mean it's not permissible here. I don't quite understand that as a statutory requirement. I would say it's impermissible in the way D3 has been implemented over the past few decades, where it has been limited to these port of entry exclusion proceedings. So you even look at the regulations, which they have not been updated, unfortunately. But 212.4, implementing D3, it still references the old exclusion statutes that's saying that that's the only time an immigration judge is going to be looking at this is in the old exclusion proceedings when someone was not yet in the United States. And this goes back to even Kleindienst versus Mandel. I believe it's cited in one of the briefs. But it's a very old decision of the Supreme Court. And that's a D3 waiver. And that person was outside the United States seeking a D3 waiver. They weren't even at a port of entry. So this has never been traditionally used anywhere except at the port of entry. So when the immigration law got re-scrambled again in 1996, that's before the U visa, correct? Yes. But then we have a lot of these status names changing and the terminology is changing. But the terminology with respect to D3 did not change? The regulations. They did not update the regulations. Did not update the regulations. Because this is very old. That general D3 authority is very old. But the statute remains. Statute remains. As is pre-IRIRA? Yes. And so, well, I think they've updated. There was a reference to the Secretary at one point. And they removed that out of D3. But yes. So I think when you — this whole historical version of D3, I think, also explains why Congress found it necessary to enact D14, the U visa waiver. Because D3 doesn't have — wouldn't apply in the U visa context because they were in the United States. And so a matter of con, when they're looking at the traditional use of D3, they're citing a matter of FOIA where someone who also was in the United States in deportation proceedings was trying to invoke a D3 waiver. And they stated, no, you cannot do that because you're not at a port of entry. You're not what this D3 waiver is traditionally used for. And they said that was not permissible. And that's how the D3 waiver has always been. It's been delegated to immigration judges at ports for these port of entry exclusion proceedings, which does not occur in the U visa context. They're within the United States like petitioner. And also, just getting to these unfair results. So someone could consular process and get the U visa from abroad without entering the United States, and if they get that U visa waiver denied, they don't have a second form like petitioner has to seek another waiver. So petitioner's had — he's trying to get two bites of the apple, essentially. He's had it thrice denied by UCIS, and now he wants an immigration judge to look at his U visa waiver. But he's unlawfully in the United States, so by virtue of his unlawful presence, he's in a removal proceeding, so he gets the immigration judge to look at it as well. But the person who is outside the United States, abiding by the law, and goes through consular processing, if UCS denies their waiver, they don't even have a second form. So the person in the United States illegally gets more process than the person outside the United States abiding by the law. There are other instances of that in the immigration law, are there not? I'm sure there are, but it's unfair. It's quite unfair. We always — yes. And we try to always argue and try to preempt these kind of unfair results. There's also absurd results in the fact that, one, I pointed out that UCS has a broader authority to waive more grounds, and so you end up with a bounce back between the attorney general who can't waive as much and UCIS, which means this process should be entailed all in UCS in the first place, and immigration judges routinely miss grounds of inadmissibility because D14 charges UCIS with seeking out the grounds of inadmissibility, every single ground that might be applicable. And that's what they do at their specialized service center in Vermont. Immigration judges, however, they're not charged with looking at every single ground of inadmissibility. And what they're presented with in these Seventh Circuit and the Eleventh Circuit is they just look at what's charged in the NTA usually, which is one crime, one conviction maybe, or just one instance of unlawful presence, and they waive that. And then what happens is that UCS has to go through the whole thing again and look at every other applicable inadmissibility ground because the IJs routinely miss these grounds. Of course, the main reason for this, whether the person's out of the country or in, is you have to be a crime victim that's cooperating, right? Yeah, yes. That's the purpose. So you're going to be within the United States. I've yet to see someone who's been a victim of a crime outside the United States and applies for a U visa, and UCS is not aware of that. This is why it's a different type of visa. So how would it be unfair, then, in the example you gave? Which is what? You said that there's this disparity between in and outside the United States. Well, if someone, so in that example, someone traveled... That's not a U visa person. It could be. Hypothetically, it could be. Someone traveled to the United States... But you've never seen a case of a U visa person being outside the United States. Oh, I'm not saying that. I'm saying we've never seen a case where someone's been applying at a port of entry for a waiver for a U visa. But there have been people who applied from abroad because you could have them on a previous tourist visit to the United States. They're a victim of crime. Right. They go back for the terms of their visa, and then they file for a U visa. That's the person that has less process available to them than the person who is illegally in the United States. So that's why I think it's not supported by the statutes or the regulations. And also, it's unfair and absurd to have this second form of jurisdiction. Unless the Court has any other questions, I'll... Thank you. Uncharacteristically, I will defend the IJ's ability in an adversarial proceeding to apply the law correctly. They're trained attorneys, and this is their specialty. So it actually makes very logical sense that an immigration judge with the ICE prosecutor in the room able to suss out all the legal issues where someone is applying for a waiver. So I respectfully disagree with my colleague on the reasonableness of that procedure. But I'd also like to point out a couple other clarifications. 212D3 waiver is not limited to people entering the United States. As I mentioned, and the record in this case shows, U visa applicants inside the United States apply for D3 waivers when they are inadmissible. And because Congress created this hybrid U visa non-immigrant, normally non-immigrant waivers, before the U visa basically, anyone applying for a non-immigrant waiver was coming from outside the United States. Excuse me, a non-immigrant visa that might need a waiver. So historically, the D3 was only for people, like, coming to the physical border or port of entry. But the U visa, Congress allowed people inside to stay inside, even though they might have been undocumented, never made a legal admission before, and now they can just change their status to U visa inside. But it's still a non-immigrant. Is this a peculiar situation where everyone else who's trying to get a visa through D3 is doing it at the port of entry? That's right. So then that would counsel the other way, because if that's really what they are historically, and now we have a new way, a new type of visa, the U visa that you can get because you've presumably been here and you've been a witness, victim, et cetera, of the crime, why wouldn't that very specific thing govern as opposed to the general, which has always been at the border? The reason, I believe, is Congress specifically made the U visa a non-immigrant visa. So it had all the other characteristics of a non-immigrant visa, right, which includes the non-immigrant waiver, D3, that's for non-immigrants. Immigrants applying for green cards have a different set of waivers. Historically, you could apply either outside or inside. To this day, there's no dispute about that. 212H, 212I, this case is not about that. It's about non-immigrant. The only non-immigrant waiver in the statute was D3. All non-immigrants who needed a waiver would apply for the D3, and almost all of them would have been outside. Here, 2-4. My colleague says that, of course, he would rather have a remand than have an adverse decision. He wisely pointed out. But that a remand would be fruitless because the regulation that would be determined by the board really isn't applicable here, and you'd really get matter of con back. So I think the error that the board made in con with respect to this case in the Ninth Circuit is not taking Nijjar into account. Because Nijjar makes very clear attorney general means attorney general. There's actually a line from con where the board said, however, even if the attorney general has this waiver authority regarding U visas that was argued by Mr. Conn, we cannot conclude that such authority extends to immigration judges without taking the governing regulations and authority of immigration judges into account. They jumped right to the regulations, not the statute. So Nijjar says the statute controls, it's the attorney general, that means the immigration judge. I think that's the error, especially in light of Nijjar. I don't believe Mr. Conn was in the Ninth Circuit, so it wouldn't have been relevant in that case. But I think under Ninth Circuit law, that's already been decided. You think it's possible that they, of course, they could come back and they could take a look at it, and they say, well, we, we, okay, now we looked at the statute itself, but we also now, looking at the statute, we just reinforced that con is the because you have this very specific carve-out for U visas. Could that not be one of these? And then we would presumably give some deference to that kind of a decision. Well, Your Honor, you would only give deference, step two of Chevron, if you found that the normal statutory rules were, were, were ambiguous. Ambiguous. I don't think they're ambiguous. I think they're unambiguous, as in Nijjar, because it says attorney general, right? So the ambiguity would be how to apply the, the, how the agency should apply that attorney general, right? And that is with them. But whether or not it's the immigration judge, the, the BIA cited matter of Yowery in Conn. They relied on matter of Yowery. This Court overturned matter of Yowery in Singh, and that's in our reply brief. So we, the idea that it's not in the purview of the immigration judge is because it's a collateral issue, which my colleague mentioned, that's not really accurate. When Congress says, you visa applicants in the United States get access to the D-3 waiver, and someone is being subject to deportation with no legal route to that D-3 waiver, the statute's being violated. So to understand your point, then, you're saying that post matter of Conn, which the Third Circuit didn't have the benefit of, but post matter of Conn that there are changes plus a mis-regulation. So in your view, we should simply let the BIA have another crack at it and tell us what the answer is? I think so. All right. Right. I think so. You think you can handle it if it goes back down? We will do our best. You might, you may or may not see us back here. I don't know what the board's going to do. I never know what the board's going to do. But I, I think that they did not have the benefit of, well, they didn't have the benefit of the 7th, the 11th, subsequent decisions, but they also didn't care about matter of Nijjar because it wasn't a Ninth Circuit case. This one is. So I think that it, it could very well be a different outcome in that circumstance. And I think the IJs are the obvious logical choice for the board to make because, because a person is going to be ordered removed by an IJ without access to that D-3 waiver that the attorney general has to provide. Right? If they change the U-Visa rules to say the attorney general has a rule in the affirmative application, they might. That would, that would also solve the problem. They haven't done that. So they, they need to do something. Thank you. Thank you. Thank you both for the argument and the briefings, very helpful in an unusual case. The case of Mann v. Barr is submitted. Dissaligan v. Century Surety is submitted on the brief, so we'll now hear argument in O'Rourke v. Northern California Electrical Workers' Pension Plan.
judges: Siler, Wallace, McKeown